**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**SHREVEPORT DIVISION**

| | |
|---|---|
| **RENITTA CEYZETTE WILLIAMS** | **CIV. ACTION NO. 5:25-01054** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **LOUISIANA-1 GAMING, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**MEMORANDUM ORDER**

Before the undersigned Magistrate Judge, on reference from the District Court, are Plaintiff pro se Renitta Ceyzette Williams' ("Plaintiff") Motion for In Camera Review and Determination of Defendants' Claim of Attorney-Client Privilege [doc. #61] and a Notice of Supplemental Certification of Conference and Narrowing of Request for In Camera Review [doc. #62], which was considered an amended motion by the Clerk of Court.

The undersigned previously held a conference with Plaintiff and Defendants' counsel and granted the motion and amended motion for in camera review in part. [doc. #64]. To the extent that Plaintiff sought an in camera review of email communications directly to and/or from Jamie Augustinsky on the topics of the terminations of Ms. Williams and another employee, Ms. Miller (who has her own lawsuit pending in the Eastern District of Louisiana), Plaintiff effectively conceded that the privilege applied, and the motion was DENIED. It was clarified that Ms. Augustinsky serves as in-house employment counsel for the parent company of Defendant Louisiana-1 Gaming d/b/a Boomtown Casino & Hotel New Orleans, and the log indicates that she was conferring with Human Resources employees regarding the upcoming termination of Plaintiff and another employee. To this extent, the undersigned found that either attorney-client privilege or work product would serve to protect these materials.

However, Plaintiff maintained her motion as to additional emails that were merely copied to Ms. Augustinsky, and it was unclear whether they are covered by a privilege. Thus, to the extent that Ms. Williams moved for an in camera review of the documents that were copied to Ms. Augustinsky, the motion was GRANTED, and defense counsel were instructed to provide those documents to me via direct email. The undersigned DEFERRED ruling on the applicability of the attorney-client privilege on the documents to be produced until after review, and counsel provided the disputed emails.

The Federal Rules of Civil Procedure provide that,

> [u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1). "To find the boundaries of discovery, a court must consider two issues: relevance and proportionality. And the two issues must be considered in tandem, as '[a]ny information sought that is not relevant to a party's claim or defense is not discoverable, regardless of proportionality.'" *Dixon v. Spurlin*, No. Civ. Action No. 18-0133, 2020 WL 6707325, at *8 (W.D. La. Nov. 13, 2020) (quoted source omitted). As the 1983 Committee Note cautioned, "[t]he court must apply the standards in an even-handed manner that will prevent use of discovery to wage a war of attrition or as a device to coerce a party, whether financially weak or affluent." FED. R. CIV. P. 26, 1983, comm. note.

Further, Rule 34 provides that "a party may serve on any other party a request within the scope of Rule 26(b) . . . to produce . . . any designated documents or electronically stored

information . . . or any designated tangible things" that are within the "party's possession, custody, or control . . ." FED. R. CIV. P. 34(a)(1)(A) & (B). If a party fails to respond or raises objection to a production, the party seeking discovery may move for an order compelling the production. FED. R. CIV. P. 37(a)(3)(B)(iii-iv).

There are limits and exceptions to discovery, however. One such limit is the attorney-client privilege. Rule 26(b)(5) provides:

> (A) Information Withheld. When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.
>
> (B) Information Produced. If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

FED. R. CIV. P. 26(b)(5).

"It is *sine qua non* that privileged documents are evidence that an opposing party could potentially otherwise use in support of its claims or defenses: if a privileged document was not both relevant and responsive to the opposing party's discovery requests, the document would not be included on the producing party's privilege log." *Jolivet v. Compass Grp. USA, Inc.*, 340 F.R.D. 7, 28 (N.D. Tex. 2021) (citing FED. R. CIV. P. 26(b)(5)). When the attorney-client

privilege is asserted, either initially under subsection (A) or under the "clawback" provision of subsection (B), the United States Court of Appeals for the Fifth Circuit has set forth the analysis to be conducted:

> "The attorney-client privilege limits the normally broad disclosure requirements of Federal Rule of Civil Procedure 26 ...." *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 472 (E.D. Pa. 2005). For a communication to be protected under the privilege, the proponent "must prove: (1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997). Determining the applicability of the privilege is a "highly fact-specific" inquiry, and the party asserting the privilege bears the burden of proof. *Stoffels v. SBC Commc'ns, Inc.,* 263 F.R.D. 406, 411 (W.D. Tex. 2009) (citing U*nited States v. Kelly,* 569 F.2d 928, 938 (5th Cir. 1978)); *see also [Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S.,* 768 F.2d 719, 721 (5th Cir. 1985)*]*. "Once the privilege has been established, the burden shifts to the other party to prove any applicable exceptions." *Perkins v. Gregg Cty.*, 891 F.Supp. 361, 363 (E.D. Tex. 1995) (citation omitted). Ambiguities as to whether the elements of a privilege claim have been met are construed against the proponent. *See Scholtisek v. Eldre Corp.*, 441 F.Supp.2d 459, 462–63 (W.D.N.Y. 2006) (listing cases).
>
> Because the attorney-client privilege "has the effect of withholding relevant information from the fact-finder," it is interpreted narrowly so as to "appl[y] only where necessary to achieve its purpose." *Robinson*, 121 F.3d at 974 (quoting *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)).

*Equal Emp. Opportunity Comm''n v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017). Further, the mere fact that a company's counsel is copied on an email is not a sufficient showing to invoke the privilege. *See id.*at 696 ("Additionally, 'communications by a corporation with its attorney, who at the time is acting solely in his capacity as a business advisor, [are not] privileged," *Great Plains Mut. Ins. Co. v. Mut. Reinsurance Bureau*, 150 F.R.D. 193, 197 (D. Kan. 1993), nor are documents sent from one corporate officer to another merely because a copy is also sent to counsel, *Freeport–McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Res., Inc.*, No. 03-1496, 2004 WL 1299042, at *25 (E.D. La. June 4, 2004)).

In the instant case, Defendants initially produced a number of documents to Plaintiff. Upon later review, Defendants determined that they had inadvertently produced copies of internal emails, bates numbered DEFE-248 through DEF-261 (14 pages) and DEF-320 through DEF 335 (16 pages). In an August 31, 2026 email to Plaintiff, counsel notified her of the inadvertent production, asserted attorney-client privilege as to those documents, and requested, under Rule 26(b)(5)(B), that she destroy the copies of these documents, refrain from using or disclosing their contents, and confirm in writing that she had complied with the request.

On September 8, 2026, Defendants provided an updated privilege log identifying each email by bates number (e.g., DEF-000248), the date and time of the email, the sender, the recipient(s), any CC, the subject-line, and the asserted privilege. For each of the remaining disputed emails, Defendants assert that they are covered by attorney-client privilege. Plaintiff is clear that she is not seeking to violate attorney-client privilege, but believes that she is entitled to production of emails which are properly characterized as business communications that were merely copied to counsel.

Plaintiff is correct, of course, that emails between or among Human Resources employees are not necessarily privileged communications simply because corporate counsel was copied. On the other hand, the fact that Ms. Augustinsky was copied, rather than emailed directly, does not preclude the application of the privilege. As the Fifth Circuit has explained, each determination is fact intensive. *Equal Emp. Opportunity Comm'’n v. BDO USA, L.L.P.,* 876 F.3d 695.

In context, after in-camera review, the undersigned finds that all remaining documents over which Defendants assert the attorney-client privilege are subject to that protection. While the remaining disputed emails were not sent directly to or from Ms. Augustinsky, they are all part of an ongoing chain of communications between Human

Resources employees and Ms. Augustinsky during a three-day period from August 19-21, 2024, immediately prior to Plaintiff's termination on August 21, 2024. Under the applicable standard, the undersigned finds that these communications were made to counsel for the primary purpose of "securing either a legal opinion or legal services, or assistance in some legal proceeding." Specifically, the communications concerned not only Plaintiff, but another employee, who already had a pending workers' compensation case (i.e., a legal proceeding), and the communications, whether they were copied to or sent directly to Ms. Augustinsky, were intended to both inform and elicit a legal opinion or advice, which it is undisputed that Ms. Augustinsky gave. Accordingly,

IT IS ORDERED that the deferred portion of the pending Motion for In Camera Review and Determination of Defendants' Claim of Attorney-Client Privilege [doc. #61] and a Notice of Supplemental Certification of Conference and Narrowing of Request for In Camera Review [doc. #62] are now DENIED,[1] and the disputed documents are protected by attorney-client

---

[1] As this motion is not excepted within 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this order is issued under the authority thereof, and in accordance with the standing order of this court. Any objection/appeal must be made to the district judge in accordance with Rule 72(a).

privilege.[2]

In Chambers, at Monroe, Louisiana, on this 29th day of October, 2026.

Kayla Dye McClusky

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE

[2]The undersigned has no information to suggest that Defendants seek to use the privilege as both a shield and a sword. In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials. The party asserting the claim is said to have implicitly waived the privilege. *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (citations omitted). Should Defendants seek to use the emails as a "sword," then Plaintiff would have a basis to re-visit the privilege.

Further, it is noted that the undersigned's determination that the email chain of communications is privileged does **not** preclude Plaintiff from having obtained or seeking to obtain non-privileged information about her termination through the discovery process, including the remaining depositions taken this week.